IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE: | * | |
| CALVERT LLEWELLYN JEREMY | * | Case No. 13-29597-TJC |
| JOLITA MERVINA JEREMY | | Chapter 13 |
|    DEBTORS | * | |
| * * * * * * | * * * * * * * | |
| CALVERT LLEWELLYN JEREMY | | |
| JOLITA MERVINA JEREMY | * | Adv. No. 14-00310 |
|    PLAINTIFFS | | |
| | * | |
| v. | | |
| | * | |
| JP MORGAN CHASE BANK, INC. | | |
|    DEFENDANT | * | |
| * * * * * * * * * * * * * | | |

**RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT FOR DECLATORY ACTION TO DETERMINE SCOPE, VALIDITY AND EXTEND OF LIEN OF DEFENDANT'S PURSUANT TO 11 U.S.C. §§105(a) and 506(a) AND 28 U.S.C §§2201-2202**
*(And REQUEST FOR HEARING)*

CALVERT LLEWELLYN JEREMY and JOLITA MERVINA JEREMY (the "Debtors" and "Plaintiffs"), by and through undersigned counsel John D. Burns, Esquire, and The Burns LawFirm LLC hereby files this RESPONSE TO MOTION TO DISMISS COMPLAINT FOR DECLATORY ACTION TO DETERMINE SCOPE, VALIDITY AND EXTEND OF LIEN OF DEFENDANT'S PURSUANT TO 11 U.S.C. §§105(a) and 506(a) AND 28 U.S.C §§2201-2202 as to JP MORGAN CHASE BANK, INC. (the "Defendant") and states as follows:

**FACTUAL STATEMENT:**

On or about November 20, 2013 the Plaintiffs filed a voluntary petition under Chapter 13 of the Bankruptcy Code. On or about May 30, 2014 the Plaintiffs filed a Complaint

[Adv. Dkt. 1] as to the Defendant's Claim on the Property. The Defendant in turn filed a Motion to Dismiss in the above captioned adversarial proceeding on or about July 7, 2014.

The Plaintiffs own property at 9333 Wellington St. Lanham, MD (the "Property") which has a value of $225,000.00 per BPO [**See Schedule A Dkt 14**]. The Defendant has been scheduled as a first priority lien holder in the amount of $477,833.00 [*See* **Schedule D Dkt 14**] on the Property. On or about February 2, 2014 the Defendant filed a Proof of Claim (the "Claim") for $425,457.11 [**Claim Dkt. 5**].

The Claim is subject to "strip down" or partial avoidance under 11 U.S.C. §506(a) because it is not an allowed claim secured by a lien on the Property above the value of the Property at $225,000.00. Accordingly, as recited within the Complaint, taking the Claim as filed at $425,457.11 , it is subject to "strip down" to an unsecured claim in the amount of $200,457.11

Section 1322(b)(2) of the Code provides in relevant part that the Debtor may "modify the rights of holders of secured claims, other than a **claim** secured **only** by a security interest in real property that **is** the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." *See*, 11 U.S.C. § 1322(b)(2) (2011) (Emphasis supplied). The key words herein are "claim," "only."

The Claim is not "only" secured by the Property even if there is a valid secured claim under the deed of trust (the "DOT") relating to the Claim herein. The DOT demonstrates that the Claim herein asserts a security interest or assignment in other collateral which takes them outside the anti-modification provisions that would apply if this were a principal residence. For example, *Section 2 of the DOT represents additional collateral and establishes Escrow Items that the Lender may collect in an amount that may be required for Borrowers escrow account under the Real Estate Settlement Procedures Act of 1974. The*

*Escrow funds are pledged as additional security for all the sums secured by the DOT. Further Condemnation Proceeds are likewise assigned and constitute collateral within the DOT. See Section 6. An Assignment of Rents is likewise included as supplemental collateral. See Section 17. Finally Section 9(e) of the DOT also contains a requirement of an assignment of insurance proceeds provision which constitutes additional security for the monies advanced.*

The Property is also only designated as a principal residence of the Plaintiffs for one year after the closing on the loan. DOT ¶ 5.

Accordingly, the Complaint sets forth a plain set of facts seeking relief; namely, that Defendant's alleged first priority lien be stripped down to the value of the Property.

## ARGUMENT:

1. ***Motion to Dismiss:***

On July 7, 2014 the Defendant has filed a Motion to Dismiss the Complaint (the "Motion to Dismiss") wherein it contends that (i) the DOT is only secured by the Property because of the definitions of a "debtor's principal residence" and "incidental property" under 11 U.S.C. §§ 101(13A) and 101(27B); and that (ii) the Supreme Court's decision in *Nobelman*, *infra*, rejected the Plaintiffs approach. Neither conclusion is well founded.

2. ***The Complaint Meets the "Short and Plain" Standard and Meets Plausibility:***

All that is called for under Rule 8(a) of the Federal Rules of Civil Procedure in a complaint is a short and plain statement:

> A pleading that states a claim for relief must contain:
>
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

>(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
>(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

*See*, Fed. R. Civ. P. 8(a) (2011).

"Factual allegations must be enough to raise a right to relief above the speculative level" 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). "The need at the pleading stage for allegations *plausibly suggesting* (not merely consistent with) [the matter at issue] reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possesses enough heft to 'sho[w] that that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 558, 127 S.Ct. 1961, 1966 (2007) (Emphasis supplied).

Numerous courts have treated *Twombly* with further refinements. *See, In re Netflix Antitrust Litigation*, 506 F. Supp. 2d 308, 321 (N.D. Cal. 2007) (refusing to extend *Twombly* **as discovery could prove useful in determining facts of case**) (Emphasis supplied); *See also, CBT Flint Partners, LLC v. Goodmail Systems, Inc.,* 2007 WL 4531829, *2 (N.D. Ga. 2007) (the retirement of Conley's "no set of facts" language does not change the fundamental command of Rule 8 of what a valid complaint must look like); *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007) (*Twombly* did not create heightened standard of pleadings but rather created a plausibility standard, which obligates a pleader to amplify factual allegations in those contexts where amplification is needed to render a claim plausible); *But see, Ashcroft v. Iqbal,* No. 07-1015, slip op. at p. 19 (May 19, 2009) ("Determining whether a complaint states a plausible claim for relief will as the Court of Appeals observed be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Although the Defendant may disagree with the legal contention that is premised within the Complaint, it cannot be said that the pleading is missing any essential elements of the required claim, or that it fails to have enough "heft" to articulate a plausible claim for ultimate determination by this Bankruptcy Court.  The Motion to Dismiss should be denied.

### 3. *Supplemental Collateral Waives Anti-Modification Provisions:*

The pivotal issue in this case or controversy is whether words mean what they say, and if so, whether the Bankruptcy Court should assign such words their ordinary and customary meaning.

Section 1322(b)(2) of Title 11 provides in relevant part that the debtor may "modify the rights of holders of secured claims, other than a claim secured *only by a security interest in real property that is the debtor's principal residence*, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."  *See*, 11 U.S.C. § 1322(b)(2) (2011).  (Emphasis supplied).

The plain and ordinary meaning of the word "only" is "alone in a class or category."  *Webster-Merriam Dictionary Online* (2012).  "[A] statute must, if possible, be construed in such fashion that every word has some operative effect."  *In re Hicks*, 138 B.R. 505, 507 (Bankr. D. Md. 1992), *citing United States v. Nordic Village*, 112 S.Ct. 1011, 1015 (1992); *United States v. Menasche*, 75 S.Ct. 513, 538-39 (1955).  The Supreme Court has recognized that any endeavor of statutory interpretation should begin with the plain words of the statute.  *See United States v. Ron Pair Enterprises, Inc.*, 109 S.Ct. 1026 (1989*); Landreth Timber Company v. Landreth,* 105 S.Ct. 2297 (1985).  "In this case, it is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *Hicks,* 138 B.R. at 507 (citations omitted).  A court is to examine

statutory language first, and if unclear, then to look to legislative history.  <u>See, Toibb v. Radloff</u>, 501 U.S. 157, 111 S.Ct. 2197 (1991).

Similarly, the term "real property" should be afforded its restrictive and ordinary meaning; namely, "any land or improvements to land."  *Supervisor of Assessments of Baltimore County v. Greater Baltimore Med. Ctr., Inc.*, Md. App. Case. No. 2060 (Sept. Term 2009) (Dec. 1, 2011) (Reported)., p.10 *citing to Black's Law Dictionary,* p. 1218 (6th ed. 1990), ("defining real property as '[l]and and generally whatever is erected and growing upon and affixed to the land."). Moreover, improvements are "such things as are placed thereon by the way of betterments which are of a permanent nature and which add to the value of the property as real property including buildings and structures of every kind." *Allentown Plaza Assoc. v. Suburban Propane Gas Corp.*, 43 Md. App. 337, 346 (1979).

Finally, the word "is" carries no serious alternative meanings other than the "present." *Webster-Merriam Dictionary Online* (2012).  This is despite the attempts of a prior well publicized effort on behalf of a former United States President who shall remain unnamed to relate it to a past-tense.  Suffice it to say that "is" means "is" in the present tense.

The Motion to Dismiss contends at its essence that *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993) precludes the arguments made herein because the miscellaneous proceeds assigned to the Defendant are without a distinction of substance from the collateral which constitutes the real property that is the principal residence.  However, this logic is simply misplaced given long standing precedent on this issue, and is not cured by any 2005 amendments to Title 11 on the subject of what constitutes a principal residence or incidental property.

The Third Circuit has held "that a mortgagee who has an additional security

interest in property other than the real estate which is the mortgagors' principal residence cannot claim any benefit from section 1322(b)(2)'s anti modification provision and therefore such a mortgagee's claim can be bifurcated under section 506(a)." *Hammond v. Commonwealth Mortgage Corporation of America,* 27 F.3d 52, 56 (3d Cir. 1994). The *Hammond* court rejected the very same arguments that are being made today by this Defendant; namely, that various aspects of small and perhaps arguably trivial items of personal property associated with the residence are somehow a part of the real property that is the principal residence itself. In *Hammond,* there was a security interest in "any and all appliances, machinery, furniture and equipment (whether fixtures or not) of any nature whatsoever now or hereafter installed in or upon said premises." *Id* at 54.

In rejecting the same argument that is being made in this case by Sun Trust, *Hammond* reviewed the *Nobleman* decision itself.

Specifically, as observed by *Hammond*, the District Court in *Nobleman* observed without fanfare the existence of "an additional security interest in 'the common areas of the condominium complex, escrow funds, proceeds of hazard insurance, and rents.'" *Hammond*, 27 F.3d at 56, *citing to* <u>Nobleman</u>, 129 B.R. 98, 99 (N.D. Tex. 1991). The District Court in *Nobleman* commented in *dictum* that these additional security interests were "without merit." *Nobleman*, 129 B.R. at 104.

The Third Circuit in *Hammond* gave this *dictum* no weight: First, neither the United States Supreme Court nor the Fifth Circuit in *Nobleman* gave this factor of additional security any discussion or consideration in issuing their separate opinions. Secondly, the Third Circuit refused to recognize an argument that such personalty and related supplemental collateral was a small trifling affair that should be ignored. *See, Hammond*, 27 F.3d. at 56. Citing long

standing Circuit Court precedent, the *Hammond* Court reinforced the rule that supplemental collateral in a deed of trust will cause a waiver of the anti-modification rights of 11 U.S.C. § 1322(b)(2).  *See, Hammond*, 27 F.3d at 57.  *See also, Wilson v. Commonwealth Mortgage Corp*., 895 F.2d 123, 128-29 (3d Cir. 1990) ("security interest in personal property contained in a deed of trust effects a waiver of anti-modification provisions"); *Sapos v. Provident Institution of Savings in the Town of Boston*, 967 F.2d 918, 921 (3d Cir. 1992) ("where a claim is secured by other collateral, a mortgage may be modified").

> The Third Circuit's ruling was unequivocal:
>
> We held in *Wilson* that section 1322(b)(2)'s language plainly states that a mortgagee who has an additional security interest gets no protection from the anti-modification clause of section 1322(b)(2). Id. ("The language of section 1322(b)(2) is unambiguous. The language of the bankruptcy judge bears repeating: **'If Commonwealth wishes otherwise, it should delete such language from its agreements**.' "). We also relied on Collier on Bankruptcy to buttress our holding that creditors who demand additional security interests in personalty or escrow accounts and the like pay a price. Their claims become subject to modification. ***Their recourse, if they wish to avoid modification, is to forego the additional security***. Id. (citing 5 Collier on Bankruptcy p 1322.06 at 1322-14-15).

*Hammond*, 27 F.3d at 57 (Emphasis supplied).

The Defendant also contends that "in applying the anti-modification provision of 1322(b)(2), Courts have held that the anti-modification protection of 1322(b)(2) is available to a mortgagee only as long as security interest grants no interest above those which are inextricably bound to the real property itself" *In re Escue,* 184 b.R. 287, 291 (Bankr. M.D. Tenn 1995). The Plaintiffs do not contend that the case law is erroneous, but rather that the mortgage is not *only* secured by the real property or anything that is "inextricably bound to the real property" because

as itemized above the Deed of Trust provides supplemental collateral that is neither real property or inextricably bound to the real property.

Case law within the Fourth Circuit and otherwise has reinforced this common sense ruling. "If the examination of the loan documents reveals that such documents do provide for a security interest in addition to the security interest in the residence, then the claim is not secured solely by the debtor's residence and can be modified. The conclusion that a security interest can be modified under such circumstances does not depend upon the enforceability of the additional security interest or the availability or value of the additional collateral when the Chapter 13 case is filed." *See, In re Hughes*, 333 B.R. 360, 362 (Bankr. M.D.N.C. 2005). Other decisions as well have demonstrated that supplemental collateral will divest the secured lender of any anti-modification rights in other contexts as well. *See, eg, Lomas Mort. Inc. v. Louis*, 82 F.3d 1, 7 (1st Cir. 1996) (We hold that the anti-modification provision of § 1322(b)(2) does not bar modification of a secured claim on a multi-unit property in which one of the units is the debtor's principal residence and the security interest extends to the other income-producing units); *Accord, In re Scarborough*, 461 F.3d 406 (3d Cir. 2006).

Finally, the amendments made to Title 11 as a part of BAPCPA do not militate to the contrary. In 2005, Congress added Sections 101(13A) and 101(27) to Title 11 of the United States Code. Each of these sections is addressed below:

> The term "debtor's principal residence"—
> **(A)** means a residential structure if used as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to real property; and
> **(B)** includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer if used as the principal residence by the debtor.

11 U.S.C. § 101(13A) (2011).

The term "incidental property" means, with respect to a debtor's principal

residence—

**(A)** property commonly conveyed with a principal residence in the area where the real property is located;

**(B)** all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and

**(C)** all replacements or additions.

11 U.S.C. § 101(27B) (2011).

The plain language of these provisions conjunctively modifies the term principal residence. However, for the reasons that follow, it does not redefine or otherwise omit from 11 U.S.C. § 1322(b)(2) that such principal residence must be real property to fall within the anti-modification provisions of Title 11.

The Eastern District of North Carolina held that a debtor could bifurcate their claim even when the claim is held in a home that is being used as a primary residence because the loan documents have the property listed as a secondary residence. *In re Proctor* 2013 12-08116-8-SWH (Bankr.E.D.N.C., 2013). Following the precedent set in *In re Ennis*, 558 F.3d 343 (4th Cir. 2009), the *Proctor* Court held that changes to the § 101(13A) statutory definition of a principal residence did not, itself, imply any change to the already existing and entirely separate requirement in § 1322(b) that a claim be secured only by "real property that is the debtor's principal residence." To resolve the issue of whether the debtor's mobile home in *In re Ennis* was real property under the new BAPCPA definition of "principal residence" or personal property, as the debtor argued, the court looked to state law to determine how the mobile home was taxed, and examined the security agreement itself. In the agreement, the debtor "agreed that the mobile home would 'remain personal property' and that it would 'not become a fixture or part of the real property' without Green Tree's written consent." *Id.*

The Eastern District of North Carolina relied on *In re Bradsher*, 427 B.R. 386 (Bankr.M.D.N.C. 2010) in the case of *In re Murray* where like in *Bradsher* the deed of trust associated with the Creditor's claim contained a provision for the collection of monthly escrow funds which are "pledged as additional security for all sums secured by this Security Instrument." Therefore, the inclusion of the account as security rendered the anti-modification exception of § 1322(b)(2) inapplicable. *In re Murray* 2011 WL 5909638 (Bankr. E.D.N.C. 2011). Because the collateral was secured by escrow funds the debtors have allowably bifurcated the Creditor's claim. *Id.* In *Bradshaw v. Asset Ventures, LLC (In re Bradshaw)* 2014 WL 2532227 (Bankr.E.D.N.C. 2014) as in *Bradsher* and *Murray* the Defendant's deed of trust asserted a security interest in any escrow account an item of personal property. As a result, the anti-modification clause of 11 U.S.C. § 1322(b)(2) did not apply.

The Middle District of North Carolina decided that because a Mobile Home is personal property as defined by North Carolina law the Creditor's lien was not secured only by an interest in real property, it is not entitled to the protection of the anti-modification provision of § 1322(b)(2). *In re Melara*, 441 B.R. 749 (Bankr.M.D.N.C. 2011).

It is a familiar maxim that "a statutory term is generally presumed to have its common-law meaning." *Taylor v. United States*, 495 U.S. 575, 592 (1990). Similarly, "where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." *Evans v. United States*, 504 U.S. 255, 260 (1992) Accordingly, there is no reason that Congress should have been presumed to depart from the long standing definitions of words such as "real property" in the enactment of

BAPCPA, nor should Congress be presumed to have forgotten how to reconcile newer statutory enactments with its older enactments, when joining them for prospective interpretation.

It was this logic which compelled the Fourth Circuit to opine that the enactments under BAPCPA issued in 2005 under 11 U.S.C. § 101(13A) did not alter the meaning of 11 U.S.C. § 1123(b)(5), as interpreted through it corollary Section 1322(b)(2) of the Code. "The prohibition against modification in § 1322(b)(2) has two distinct requirements: first, the security interest must be in real property, and second, the real property must be the debtor's principal residence. The definition of "debtor's principal residence" addresses only the second requirement, "leaving the explicit `real property' [requirement] untouched." *In re Ennis*, 558 F.3d 343, 345-346 (4th Cir. 2009), *citing to In re Herrin*, 376 B.R. 316 (Bankr. D. Ala. 2007). As *Ennis* opined, a basic canon of statutory construction is to interpret statutory amendments by harmonizing them where possible and to interpret them if possible to afford meaning to every word. *See, Ennis*, 558 F.3d at 346. "[P]roperty interests are created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55 (1979).

Accordingly, because "real property" was omitted from amendment to BAPCPA in 2005, its requirement under 11 U.S.C. § 1123(b)(5) remains mandatory to invoking the anti-modification provision. Based on the precedent set in *In re Ennis* 558 F.3d 343, *In re Proctor* 201312-08116-8-SWH (Bankr.E.D.N.C., 2013), *In re Bradsher*, 427 B.R. 386, *In re Murray* 2011 WL 5909638 (Bankr.E.D.N.C., 2011), *In re Bradshaw*, 2014 WL 2532227 (Bankr.E.D.N.C., 2014) and *In re Melara,* 441 B.R. 749 (Bankr.M.D.N.C., 2011) because "real property" under Maryland law is restricted to "any land or improvements to land." *See, Supervisor of Assessments of Baltimore County, supra,* there exists no bar on modification of the

Claim herein because the DOT is not restricted to "real property" but contains numerous items of other property that are assigned and conveyed as supplemental collateral.

Finally, even assuming this Bankruptcy Court were to find contrary to both the exacting words of the statute and binding Fourth Circuit precedent on the above issue, that the definitions of 11 U.S.C. §§ 101(13A) and 101(27B) further confine the statutory interpretation of 11 U.S.C. § 1322(b)(2) respectively, these provisions have no impact on the supplemental collateral found within the DOT.  The definition of "Escrow Items" is far broader than the limited list of collateral found to be set forth as "incidental property" under Section 101(27B) of the Code.  Accordingly, the DOT is modifiable and falls outside of the anti-modification provisions of Title 11 herein.

Where Congress enacts statutory amendments that potentially intrude on traditional areas of state law jurisprudence (such as here, matters as to what defines such incidental property), the "sole function of the courts is to enforce the statute according to its terms."  *See, Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 564 (1990).  In adherence to this principal, and in deference to the Fourth Circuit in *Ennis,* this Bankruptcy Court should find and conclude that the items of supplemental collateral are not in the nature of real property, because they are not so defined under the conjunctive reading of 11 U.S.C. §§ 101(13A), (27B), or 1322(b)(2).  Moreover, the Bankruptcy Court should therefore find and conclude that these Miscellaneous Proceeds are in the nature of collateral assigned as security, and therefore declare this Deed of Trust outside of the anti-modification provisions of 11 U.S.C. § 1322(b)(2).

### REQUEST FOR HEARING:

Plaintiffs request a hearing on this contested matter.

**CONCLUSION:**

For the foregoing reasons, the Motion to Dismiss should be DENIED.

                                            Respectfully Submitted,
                                            ---------/S/ John D. Burns-------

                                            _____
                                            John D. Burns, Esquire (#22777)
                                            The Burns LawFirm, LLC
                                            6303 Ivy Lane; Suite 102
                                            Greenbelt, Maryland 20770
                                            (301) 441-8780
                                            jburns@burnsbankruptcyfirm.com
                                            Counsel to Plaintiffs

Dated:  July 10, 2014

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT ON THIS 10TH day of July, 2014 a true and correct copy of this Response to the Motion to Dismiss was served via first class mail and those Parties on the Matrix receiving ECF unless otherwise specified upon:

Office of the United States Trustee (VIA ECF)
6305 Ivy Lane; Suite 600
Greenbelt, MD 20770

Timothy Branigan (VIA ECF)
Chapter 13 Trustee
P.O. Box 1902
Laurel, MD 20725-1902

JP MORGAN CHASE BANK, INC  (VIA FIRST CLASS MAIL)
THE CORPORATION TRUST, INC., RESIDENT AGENT
351 WEST CAMDEN STREET
BALTIMORE, MD 21201

Christina M. Williamson, ESQ (VIA ECF)
BWW Law Group, LLC
4520 East West Highway Suite 200
Bethesda, MD 20814

---------/S/ John D. Burns-------

_____
John D. Burns, Esquire (#22777)