```
                 IN THE UNITED STATES BANKRUPTCY COURT
                    FOR THE DISTRICT OF MARYLAND
                          SOUTHERN DIVISION


- - - - - - - - - - - - - - - x
CALVERT LLEWELLYN JEREMY       :
and                            :    Case No. 13-29597-TJC
JOLITA MERVINA JEREMY,         :
                               :    Chapter 13
            Debtors.           :
- - - - - - - - - - - - - - - x
JEREMY, et al.,                :
                               :
            Plaintiffs,        :
                               :    Adversary No. 14-00310
      v.                       :
                               :
JP MORGAN CHASE BANK, INC.,    :
et al.,                        :
                               :    May 18, 2015
            Defendants.        :
- - - - - - - - - - - - - - - x    Greenbelt, Maryland
```

**HEARING**


(5)  MOTION TO DISMISS ADVERSARY PROCEEDING FILED BY DEFENDANT
         JP MORGAN CHASE BANK, NATIONAL ASSOCIATION


BEFORE:                HONORABLE THOMAS J. CATLIOTA, Judge

APPEARANCES:           JOHN DOUGLAS BURNS, Esq.
                       The Burns Law Firm, LLC
                       6303 Ivy Lane, Suite 102
                       Greenbelt, Maryland  20770
                         On Behalf of the Plaintiff

                       CHRISTINA M. WILLIAMSON, Esq.
                       SAFA ASHRAFI,Esq.
                       BWW Law Group, LLC
                       6003 Executive Boulevard, Suite 101
                       Rockville, Maryland  20852
                         On Behalf of the Defendant


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

Audio Operator:          Rita Hester

Transcription Company:   CompuScribe
                         5100 Forbes Boulevard
                         Suite 101
                         Lanham, Maryland  20706
                         (301) 577-5882

3

<u>I N D E X</u>

<u>Page</u>

Motion to Dismiss on Behalf of the Defendants
  By Christina M. Williamson, Esq.                    4

Argument on Behalf of the Plaintiffs
  By John Douglas Burns, Esq.                         8

Rebuttal Argument
  By Christina M. Williamson, Esq.                   23

Rebuttal Argument
  By John Douglas Burns, Esq.                        25

Decision of the Court                                26

Keynote:  "---" indicates inaudible in the transcript.
          "*" indicates phonetic spelling in the transcript.

gaw                                                                                      4

<pre>
 1                        P R O C E E D I N G S

 2              THE CLERK:  All rise.  The United States Bankruptcy

 3  Court for the District of Maryland now resumes its regular

 4  session.  The Honorable Thomas J. Catliota presiding.  Please

 5  be seated and come to order.

 6              On the 2:00 o'clock docket, the Matter of Jeremy, et

 7  al., v. JP Morgan Chase Bank, Inc., et al, Case No. 14-00310;

 8  main Case 13-29597.  Counsel, would you please come to the

 9  podium and identify yourselves for the record?

10              MR. BURNS:  John Burns, counsel for the Plaintiff.

11              THE COURT:  Good afternoon.

12              MR. BURNS:  Good afternoon, Your Honor.

13              MS. WILLIAMSON:  Good afternoon, Your Honor.

14  Christina Williamson on behalf of the Defendant.

15              THE COURT:  Good afternoon.

16              MS. ASHRAFI:  Your Honor, Safa Ashrafi on behalf of

17  the Defendant.

18              THE COURT:  Good afternoon.

19              All right.  We are here on a motion to dismiss the

20  adversary proceeding.  Ms. Williamson, it is your motion.

21              MS. WILLIAMSON:  Thank you, Your Honor.  Your Honor,

22  today in the Jeremy case we are here on a motion to dismiss for

23  failure to state a claim.  In the complaint the Debtors are

24  attempting to cram down the first lien of a mortgage, which is

25  clearly not allowable and is an exception to the modification
</pre>

1   provision.  And 1322(b) clearly states that principal residence

2   cannot be crammed down, cannot be bifurcated.  And many

3   different proceedings at this court have been heard with

4   relation to the first lien attempt, cram down attempt.  And

5   most recently, this has gone in front of the United States

6   District Court on appeal in *Akwa versus Residential Credit*

7   *Solutions.*  We still have a Westlaw cite on that, 2015 Westlaw

8   2085191, District of Maryland decided, and signed on April 30,

9   2015, where we had already filed a motion to dismiss based on

10  failure to state a claim for the inability to modify the first

11  lien of the mortgage.

12       The Jeremys are making an attempt to state that there

13  is additional collateral in the form of rents and escrow and

14  insurance.  But we have clearly seen through the various

15  memorandum opinions, through this series and most recently in

16  the *Akwa* decision at the District Court level, that the rents,

17  escrow, and any other extraneous amounts that are usual and

18  inextricably bound to the real property are the principal

19  residence combined.

20       It is defined in 10127(b), incidental property,

21  property that includes escrow, rent, insurance proceeds.  This

22  was further bolstered in the opinion of the District Court

23  where it specifically says that the inclusion of rents and

24  escrow is deeming additional security and to not consider these

25  to be part of the principal residence will completely

gaw                                                                6

1   eviscerate the anti-modification exception of 1322(b).

2           These items are clearly to protect the investment.

3   They are not separate and apart.  And in this particular case,

4   we fully acknowledge that there is a specific provision in the

5   deed of trust that does state -- and I will quote for

6   clarity -- "The escrow funds are pledged at the additional

7   security for all funds secured by this security instrument."

8   But it goes on to state "If borrower tenders, surrender the

9   full payment of all such sums, borrower's account shall be

10  credited with the balance remaining for all installment items

11  A, B, and C, insurance, taxes, and so forth.  And the mortgage

12  insurance premium installment that lender has not become

13  obligated to pay to the secretary, the lender shall promptly

14  refund all excess funds to the borrower.  Immediately prior to

15  a foreclosure sale of the property or its acquisition by

16  lender, borrower's account shall be credited with any balance

17  remaining for all installments for items A, B, and C.

18          So it is quite obvious that these items are

19  completely flagged for a very specific purpose of protecting

20  the collateral that is well defined.  I don't think we have any

21  argument about.  The collateral is well defined in the deed of

22  trust.

23          So *In Re. Davis* was incorporated in the *Akwa*

24  decision.  It is 989 F.2d. 208, a Sixth Circuit case from 1993.

25  And it says that hazard insurance is merely a contingent

1    interest, an interest that is irrelevant until the occurrence

2    of some intervening event.  And it goes on to discuss rents,

3    royalties, profits, so forth.  They are the ones that I quoted

4    earlier that specifically said deeding additional security will

5    completely eviscerate the anti-modification exception.

6              Bankruptcy Code clearly defines where we are with

7    regard to what is principal residence, what is the target of

8    1322(b).  That being said, we also have a grand public policy

9    concern that I mentioned in my motion to dismiss.  If we were

10   to allow for bifurcation of any loan that would have a

11   provision with regard to escrow, this is an FHA loan.  FHA

12   would then no longer be interested in sponsoring these loans.

13             *Akwa* said maybe the Debtor would be on more solid

14   ground, if the deed of trust explicitly attempted to take a

15   secured interest in additional collateral.  They cited a series

16   of cases, a trial court level decision, but there is also other

17   decision, primarily I note *In Re. Lunger**, that says that the

18   incidental property cannot be ignored.  And the purpose is that

19   we can't have a structure of lending that is going to note

20   engage lenders to want to lend more to support the residential

21   home mortgage industry.

22             There may be a door that was cracked at the end of

23   the *Akwa* decision, but I would say that the Bankruptcy Code

24   definitions are very, very finite and clear.  And the deed of

25   trust is obviously going to be construed in a fashion that is

1    not violating federal law.

2            And we would ask for the motion to dismiss to be

3    granted, as this is not a lien that can be modified by 1322(b).

4            Thank you, Your Honor.

5            THE COURT:  All right.  Thank you.

6            Mr. Burns?

7            MR. BURNS:  Afternoon, Your Honor.

8            THE COURT:  Good afternoon.

9            MR. BURNS:  Not surprisingly, we see the issue

10   somewhat differently.  We have heard, perhaps by my count, nine

11   times that things are clear in the Bankruptcy Code, definitions

12   are clear, and that there is no ambiguity concerning the

13   definition in the Code.  And we are in full agreement on that.

14           We have a situation here in the Jeremy case that is a

15   little different than any of the decisions which have hit this

16   Court's docket in other cases.  *Birmingham*, in the case of

17   *Akwa, Abduce*\*, and *Donaldson*\*, four decisions have been ruled

18   upon, in Fannie Mae deeds of trust.  This is the first FHA deed

19   of trust.

20           The FHA deed of trust, as Your Honor is aware from

21   the case law, primarily concerns federal cases out of the

22   District of North Carolina, cases from Indiana, and so forth,

23   dealing with the assignment that is found at paragraph two of

24   the deed of trust.  And paragraph two of this deed of trust is

25   identical to the deed of trust in several of those cases, those

1   cases being cited in my materials, the *Hughes* case, which is H-

2   u-g-h-e-s, and the *Bradsher** case, both by Judge Stocks of the

3   Bankruptcy Court for the District of North Carolina.

4          And the phrase in the deed of trust here is "The

5   escrow funds are pledged as additional security for all sums

6   secured by the security interest." Period. No comma, no dash,

7   no continuation, just period. And Your Honor, Judge Stocks in

8   reading the deed of trust that was implicated in the *Hughes*

9   decision and the *Bradsher* decision found that that was a

10  sufficient conveyance clause under North Carolina law to pledge

11  and assign escrow funds as additional collateral.

12         Now, those decisions have been joined by other

13  decisions, the *Arne** decision, which I cited to, which found

14  that rents were also in the nature of additional collateral.

15  And I might note that Judge Stocks made a particular mention

16  analysis the *Hammond* case, a Third Circuit disposition which

17  predated the 2005 BAPCPA amendments, which found that Congress

18  knew exactly what it was writing when it wrote 1322(b)(2) and,

19  I would submit in agreement with my distinguished colleague

20  here, that Congress knew exactly what it was writing when it

21  wrote 101 of the Code with the sub-definitions found, of

22  course, at, I believe, 13(a) and 29(b) that deal with the

23  definition of a debtor's principal residence and incidental

24  property.

25         But first, before we turn to the cases and the

1   theories, Your Honor, I did just want to peruse very quickly

2   the deed of trust here, because there are several places that

3   we contend the security interest was created.  And just so that

4   my argument is short and succinct, the bottom line, Your Honor,

5   we contend that, number one, under Maryland law there was a

6   security interest created.  I think that is pivotal, because if

7   there is no security interest created, obviously then that

8   raises the issue of upon what is the Debtor in this case

9   relying.  And we believe that in at least two to three places

10  there is a security interest created.

11          Secondly, whether the items under Maryland law are

12  real property and, thirdly, whether 13 -- actually, forgive me.

13  I mis-cited before.  I believe it is 13(a) and 29(b) of --

14          THE COURT:  370.

15          MR. BURNS:  -- 101 that --

16          THE COURT:  27(b).

17          MR. BURNS:  27(b).  Your Honor has got it; I don't.

18  My apologies.

19          THE COURT:  That is okay.

20          MR. BURNS:  But be that as it may, whether that

21  changes anything.  So first and foremost we have at Section 2 a

22  definition of escrow funds.  And it is a lengthy definition.

23  But in essence it provides for the mortgage insurance, monthly

24  charge instead of a mortgage insurance, or reasonable amount to

25  be determined by the secretary and called upon as escrow items.

1          THE COURT:  Well, actually, the monthly charge is

2     excluded from the escrow funds, as I read it.

3          MR. BURNS:  Shall also include the monthly -- each

4     monthly payment.  And again, I am referring to the last

5     paragraph of --

6          THE COURT:  Read the last sentence of that paragraph.

7          MR. BURNS:  "And sums paid to the lender are called,

8     except for the monthly charge," that is true, "by the

9     secretary."  That is correct.  "Except for the monthly charge

10     by the secretary.  These items are called escrow items.  And

11     the sums paid to the lender are called escrow funds."

12          THE COURT:  So it is the funds that the debtor

13     submits to the lender are the escrow items.

14          MR. BURNS:  Correct.

15          THE COURT:  Yes.

16          MR. BURNS:  Correct, Your Honor.  And these are

17     ultimately annual mortgage insurance monies. And what these

18     represent in Judge Stocks's view is additional collateral

19     because in his judgment there was actual language of

20     assignment, the word pledge.  Now, there is also words as

21     additional security.  But be that as it may, Judge Stocks

22     looked at the issue from paragraph two and only paragraph two,

23     which I think is very important in this case.  Because when we

24     go forward, Your Honor, to paragraph six -- and I do just want

25     to jump over that for a second, jump over paragraphs four and

1    five -- paragraph six deals with condemnation.  And it states

2    in relevant part, "The proceeds of any award of claim for

3    damages, direct or consequential, in connection with any

4    condemnation or other taking of any part of the property or for

5    conveyance in place of condemnation are hereby assigned and

6    shall be paid to lender to the extent of the full amount of the

7    indebtedness that remains unpaid under the note and the

8    security interest."  And other provisions follow as to how the

9    lender is to apply that to the security, excuse me, to the

10   indebtedness.

11          So at paragraph six we have the likewise phrase "as

12   to condemnation."  Now the difference between paragraph two and

13   paragraph six really is a word, "pledged" versus "assigned,"

14   and the phraseology of "as additional security."

15          I also would note, Your Honor, if we go to the rents,

16   which I do wish to turn to at paragraph 17, which is assignment

17   of rents, it says at the first sentence, "Borrower

18   unconditionally assigns and transfers to lender all the rents

19   and revenues of the property."

20          Now, that likewise contains the word "assign" and

21   "transfer."  And it cay say unconditional, but we know from the

22   case of *Bethesda Air Rights* in this district that an

23   unconditional assignment of rents is merely a security

24   interest, not a transfer of ownership.

25          So here again, we have another paragraph that we find

1  in this FHA deed of trust.  I think this is significant for

2  three reasons, Your Honor.  Judge Stocks in reviewing the deeds

3  of trust in *Hughes* and the deed of trust in *Bradsher* had this

4  deed of trust in front of him.  And I can point the Court, if

5  the Court wishes to, to an exhibit we have in the *Abdosh**

6  appeal pending before Judge Messitte where those actual deeds

7  of trust exist, or I can upload them as subsequent exhibits, if

8  Your Honor wishes to see them.  But I will represent these are

9  the same deeds of trust in *Bradsher/Hughes* as we have before us

10  right here in the Jeremy case.

11         What is significant about this, Your Honor, is in

12  both *Hughes* and *Bradsher* Judge Stocks only looked at paragraph

13  two.  No one argued anything beyond paragraph two.  And the

14  parties' analysis and the Court's ruling began and stopped with

15  the escrow fund.

16         There is then a case of *Mullins*.  And in *Mullins*

17  Judge Stocks looked at a Fannie Mae deed of trust, which did

18  not have the language as to paragraph two, which said, of

19  course, as you know, that as additional security words to the

20  effect that there is a pledge of the escrow items as additional

21  security.  However, the Fannie Mae deed of trust, which is

22  implicated here because, again, my opposing counsel argues the

23  *Akwa* decision and what relevance it has here has at paragraph

24  11 the phrase "all miscellaneous proceeds are hereby assigned

25  to the lender."  Period.

1          Now, I would submit to the Court that there is not

2    just one assignment of a security interest in this FHA deed of

3    trust we have before us.  I want to raise it so that wherever

4    this case goes from here is preserved for the record.  But we

5    have an assignment at paragraph 17.  We have an assignment at

6    paragraph 5.  And we have -- excuse me, paragraph 17, paragraph

7    6.  And we have an assignment at paragraph 2.

8          At paragraph four we have language which is

9    equivalent to an assignment in my judgment, and that is in

10   fire, flood, and other hazard insurance.  And that provides at

11   the second paragraph of Section 4, I should call it, "Each

12   insurance company concern is hereby authorized and directed to

13   make payment for such loss directly to lender instead of to

14   borrower and to lender jointly.  All or any part of the

15   insurance proceeds may be applied by lender at its option to

16   either to the reduction of the indebtedness under the note and

17   the security interest first to any delinquent amounts by the

18   order of paragraph three and then to prepayment of principal

19   or to the restoration or repair of the damaged property."

20   Period.

21         And it does state at the end that any excess

22   insurance proceeds over an amount required to pay all

23   indebtedness under this note, the note and the security

24   interest, shall be paid to the legal entity legally entitled

25   thereto -- to the entity legally entitled thereto.

gaw                                                                        15

1          Forgive me, Your Honor.  I don't have my right

2     glasses today.

3          I think the gist of this is that there is a

4     direction, an assignment of proceeds, without the word

5     "assignment."  And we contend under paragraph four there was

6     likewise an assignment.

7          So under Maryland law -- I have cited case law to the

8     proposition that there is a very flexible and informal standard

9     under the *Tilman** case and otherwise for assignments, creations

10    of security interest -- all you need is language which

11    evidences an intent to create a security interest and certain

12    other particulars as to the transfer of value and so forth.

13    And you also need, in the instance of a security interest under

14    Maryland law, a document or possession.

15          Now --

16          THE COURT:  To create a security interest, doesn't

17    the Debtor need to have rights in the collateral?

18          MR. BURNS:  I believe the Debtor does.  And I believe

19    under these three things --

20          THE COURT:  What about under the -- is there any

21    allegation that there are condemnation proceeds or there are

22    rents in this case?

23          MR. BURNS:  I am glad you asked that, Your Honor,

24    because *Hughes* dealt with that very issue.  And in *Hughes*,

25    Judge Stocks said there does not have to be actual collateral.

gaw                                                                              16

1          THE COURT:  Leave aside *Hughes*, doesn't, for there to

2    be a security interest in something, doesn't -- it is sort of

3    the old basic school, law school, is the debtor has to have

4    rights in the collateral to grant a security interest, among

5    other things, among the pledge, among the --

6          MR. BURNS:  Sure.

7          THE COURT:  So if the debtor doesn't have any

8    condemnation proceeds or if there aren't any rents, how could

9    there be a security interest in something that doesn't exist?

10         MR. BURNS:  I think it is again to the same situation

11   as where someone buys a car, and there is a pledge of insurance

12   proceeds, which are separate, of course, from the car.  And

13   then the debtor gets insurance later.  And the debtor has those

14   when there becomes an accident and then is paid even though it

15   didn't apply originally after acquired proceeds, things of that

16   nature.  I don't think the debtor has to have an actual

17   possessory or ownership interest.

18         I would note the Debtor amended its schedules to the

19   extent these funds exist.  They are on Schedule B, as amended.

20   But I do not believe that the --

21         THE COURT:  Which, the rents and the condemnation

22   proceeds?

23         MR. BURNS:  Any incidental and miscellaneous

24   property, I believe it says.

25         THE COURT:  In this case, are there such things?

gaw                                                                        17

1              MR. BURNS:  We don't know.  And we don't know because

2    we are not --

3              THE COURT:  Don't you represent the Debtor?

4              MR. BURNS:  I do, Your Honor.

5              THE COURT:  And you don't know if there are any

6    condemnation proceeds or rents from this property?

7              MR. BURNS:  As of the date of the petition, there was

8    an expectancy, to the extent they arrived and the Debtor

9    conveyed that at the time of the security interest.

10             THE COURT:  Well, here is what I am trying to find

11   out.  This is a motion to dismiss.

12             MR. BURNS:  Yes, Your Honor.

13             THE COURT:  And so, you know, we have the issue about

14   a plausible claim.  It is not summary judgment.  But the

15   complaint doesn't allege that condemnation proceeds or rents

16   exist.  So I presume as of the petition date, or I presume they

17   don't exist now.

18             MR. BURNS:  Not to my knowledge.  They are an

19   expectancy, and they exist in the future.

20             THE COURT:  I understand your argument.  Okay.

21             MR. BURNS:  Right.  But no, there are no funds in

22   anyone's possession that I am aware of for condemnation.  There

23   are no funds in anyone's hands for rent.  Actually, that is not

24   true.  The daughter is renting on a month-to-month basis with

25   Ms. Jeremy, so that is the case.  There are rents for that.

1    She has taken the daughter as a tenant, as a, you know,

2    licensee perhaps would be the better word.

3            And as to the issue of mortgage insurance, I believe

4    that does exist under this loan as being paid.  So that

5    collateral exists under Section 2.  I believe that there is

6    a -- I believe there is certainly fire, floor, and hazard

7    insurance, because I remember seeing the policy as a rider.  So

8    the Debtor is maintaining insurance on the property.  So the

9    only thing that would not be in the possession, quote-unquote,

10   of the Debtor it would seem at this time is condemnation

11   proceeds because there has been no condemnation.  But if there

12   is condemnation, our position is that the deed of trust would

13   cover it because the lender secured those as additional

14   rights.

15           So we believe there is a security interest created.

16   We believe there are words of assignment.  We believe there is

17   value that has been given.  And most significantly, we believe

18   in the context of all of these provisions in this deed of

19   trust, not just Section 2, that these are not as the words

20   were used, I believe, in *Akwa* and certainly in argument today

21   in the nature of an inextricably bound asset to the real

22   property.

23           *In Re. Enis** is a Fourth Circuit case.  And in *Enis*

24   the Court looked at whether there was a mobile home that was in

25   essence somewhat -- was not modifiable.  The Fourth Circuit

gaw                                                                          19

1    went on at length about the nature of real property, what it

2    was under, I believe, North Carolina law in that case, and

3    spoke to the need when Congress amended 101-13(a) and 27(b), to

4    have incorporated real property to those definitions, which

5    Congress did not do.

6            I am unaware of any theory, any case, under Maryland

7    law which has cited to insurance, to rents, to escrow funds,

8    condemnation proceeds as real property.  Maryland law is very

9    fixed on the notion that fixtures and improvements attached to

10   land of real property.  There is even some definitions in the

11   Maryland Real Property Code as to an interest in real property.

12   And I know that that has come up in one of these cases, but

13   that is defined by Maryland case as being an ownership

14   interest.  It is not an interest in the real property as to

15   some sort of subsequent tagalong type of asset.

16           Now *Akwa* and Judge Hazel says it doesn't really

17   matter, because under *Butner*\* the Bankruptcy Court can just

18   ignore Maryland law, if it conflicts with federal bankruptcy

19   law.  And the problem in that interpretation is that it doesn't

20   conflict.  In other words, Section 101-13 and 101-27 do not

21   require real property to be a part of those elements of a

22   debtor's principal residence or incidental property.  In fact,

23   they condition it.  It can be --

24           THE COURT:  How would any of these items in 101-27(b)

25   be pertinent to Section 1322(b)(2) under your reading?  But you

gaw                                                                    20

1    have to start with real property.  If you start with real

2    property, then -- without real -- since this is not real

3    property, you are out.  Well, then how could any of those items

4    in 101-27(b) ever be pertinent?

5              MR. BURNS:  Well, I don't know what Your Honor means

6    by "pertinent."

7              THE COURT:  Ever be applicable to the language of

8    1322(b)(2).

9              MR. BURNS:  Your Honor, they are applicable to the

10   extent that there is a definition of the Debtor's principal

11   residence.  And where there is a mobile home, for example, as

12   in *Enis* they are totally applicable because that is not real

13   property.

14             THE COURT:  But what I hear you saying is you have to

15   have -- it has to be real property.  And in this case, since

16   there is rents, condemnation proceeds, escrow, that is not real

17   property; therefore, you stop reading 1322(b)(2) at that point,

18   because it is not real property.  Then what would be the phrase

19   "that is the Debtor's principal residence"?  What would be the

20   significance of that phrase in 1322(b)(2)?

21             MR. BURNS:  I think it is extraneous other than to

22   the fact that a debtor's principal residence can be modified.

23   I think 13 -- whether or not -- 101-13(a) simply says a

24   debtor's principal residence does not need to be real property.

25   Period.  It is that basic.  And as a result, under 1322(b)(2),

1   a debtor's principal residence can always be modified unless it

2   is solely the only collateral and real property.  And that is

3   what they wrote.

4           Now, what they meant, I have cited -- we have cases

5   all over the place.  We have law review articles.  We have

6   almost zilch in legislative history.  If you look at

7   legislative history, it is almost like someone was a sleep at

8   the wheel when they wrote 101-13(a) and 279(b).  But what is

9   more remarkable is that *Nolan*,* who has been around for

10  forever.  You know, *Hammond* has been around forever.  Most of

11  these cases, *Escue** has been around forever, and not once has

12  the lending industry, who is here crying, you know, foul,

13  ever modified any of these deeds of trust for FHA or Fannie

14  Mae.

15          Now I hear what we call policy arguments.  And it is

16  interesting, Your Honor, we have a line of cases in terms of

17  the statute, and it says these are in fact not real property

18  and are separate or some other basis like the rents, and they

19  are outside the scope of 101-13(a) and 1322(b)(2).  And then

20  you have a whole line of other cases that Judge Hazel cited and

21  my esteemed colleague, Ms. Williamson, has cited, and, quite

22  frankly, that I have cited for the proposition on the other

23  side.  But each and every one of those cases, as I have

24  itemized, has said it would be an enormous hardship for the

25  lending industry where policy dictates that this is the wrong

1  result or this is going to have these horrific, apocalyptic,

2  you know, results on the lending industry.

3        And the reality is that may be true or not, but it is

4  not the purpose of statutory interpretation to read words of a

5  statute and read words in when a committee didn't put them in.

6  And they certainly didn't provide any legislative history to

7  say this is meant, as Judge Manus said in *Akwa*, to clarify

8  confusion among the bankruptcy judges.  The only confusion that

9  exists among the bankruptcy judges is when we are trying to

10  take concepts of real property saying, well, these are really

11  the sort of substitute for real properties, so we are going to

12  say they are real property even though they are not real

13  property.  And if that doesn't work, we are going to say that

14  the lenders have a policy, and they are going to be hurt by

15  these types of determinations.

16        Now, one thing the Court ought to know is that *Akwa*

17  is on appeal in the Fourth Circuit, by the way, as were all of

18  those cases.

19        THE COURT:  I am sure.  I am sure I won't be the last

20  word on this, Mr. Burns.

21        MR. BURNS:  Well, it is going to go on for a while.

22  But I started by saying, Your Honor, I wanted to examine the

23  security interest instrument, point out the security interest I

24  sought, address a Maryland conveyance and creation of security

25  interest, address Maryland law and real property, and then to

gaw                                                                          23

 1   look at the distinctions under 101-13(a) and 101-27(b).  And I

 2   would simply say that if this Court were writing on a clean

 3   slate without *Enis*, I do believe still the Court should lend

 4   itself to authentic, limited, conservative judicial

 5   interpretation of these words, plain words.

 6            But with *Enis*, I mean, we are dealing with a Fourth

 7   Circuit case that has said that real property is not

 8   encompassed within the ambit of 101-13(a) and 27(b).  And I do

 9   believe that that matters a great deal.  I would just note,

10   Your Honor, there has been no evidence submitted that FHA would

11   no longer make loans.

12            The *Davis* case is a Sixth Circuit case.  It is not

13   binding on this Court.  But I believe that Judge Hazel has

14   already addressed its reason.  And I have certainly addressed

15   what I see is its laws.

16            Unless the Court has any further questions, I will be

17   seated.

18            THE COURT:  No.  Thank you.

19            Ms. Williamson, anything further?

20            MS. WILLIAMSON:  Just briefly to go to the Maryland

21   Code references.  In regard to the Maryland Code, real

22   property article defines property as real property or any

23   interest therein or pertinent thereto.  That is Maryland Code

24   1-101(k).

25            And if there is not sufficient state law, which I

gaw                                                                              24

1    think is admitted to from my colleague -- and I agree there is

2    really not sufficient case law that talks about the items we

3    are talking about today -- that the lack of coherent body of

4    case law requires the Court to fall back to the Bankruptcy

5    Code.

6            THE COURT:  That is usually where I start.

7            MS. WILLIAMSON:  And we are in Bankruptcy Court, so

8    it does seem the best place to be.  But we don't have a

9    conflict with regard to Maryland law.  And I think that *Akwa*

10   made it very clear that we are going to look at the Bankruptcy

11   Code.  And the definitions in the Bankruptcy Code obviously do

12   include all of these items that are trying to be ripped apart

13   as separate collateral.

14           And the legislative history component or Mr. Burns's

15   statement, I do think that we can't ignore the fact that there

16   was acknowledgment in *Nobleman* that talked about the

17   legislative history.  I looked to the consenting opinion of

18   Justice Stevens, and he specifically says explained by the

19   legislative history indicating the favorable treatment of

20   residential mortgages was intended to encourage the flow of

21   capital into the home lending market.  It clearly is in the

22   legislative history.  It has been cited in cases up to the

23   Supreme Court.  And it is a valid concern that was always there

24   and present while they were developing this.  And the Code is

25   very clear.  It says principal residence.

1    The Bankruptcy Code goes on to define what the

2  principal residence is, that it includes the additional items

3  that we have at contest here today.  And we will feel as

4  though, even aside from a slight little crack in the door as

5  I mentioned before that *Akwa may have provided, that the*

6  general overall ruling is still going to lead us in the

7  direction that this is not a loan that can be modified under

8  1322(b)(2).

9            THE COURT:  All right.  Thank you.

10           MS. WILLIAMSON:  Thank you.

11           MR. BURNS:  Your Honor, may I address two points very

12  quickly?

13           THE COURT:  Yes.

14           MR. BURNS:  First of all, Ms. Williamson raised the

15  definition under Maryland Code, which I touched on.  But I did

16  wish to just note that the word "interest" in real property for

17  the Maryland Code has been treated solely as an equitable

18  interest in real property that would entitle an interest holder

19  to seek partition of the real property parcel at issue, meaning

20  it is not an enhancement to property.  it is some owner's right

21  to take action.

22           And I have some of the cases, *Triantis versus*

23  *Triantis*, T-r-i-a-n-t-i-s, 408 Md.App. 703, a 2009 case.

24  Secondly, Your Honor, I do wish to note that real property

25  under Maryland is also defined as simply land.  And that is

gaw                                                                    26

1    also in the definition.  And that, of course, enhances what the

2    actual meaning is.

3            Your Honor, with that and my brief, which

4    addressed the --- issues in more detail, I will be seated.

5            THE COURT:  All right.  Thank you.

6            All right.  Before me is an issue to be resolved by

7    reference to Section 1322(b)(2) of the Bankruptcy Code in the

8    first instance.  That provision provides that a Chapter 13

9    plan may "modify the rights of holders of secured claims other

10   than a claim secured only by a security interest in real

11   property that is the debtor's principal residence," as

12   pertinent here.

13           The Bankruptcy Code provides further guidance onto

14   what is a debtor's principal residence.  Section 101-13(a),

15   which was added to the Bankruptcy Code for the 2005 amendments,

16   provides in pertinent part that a debtor's principal's

17   residence "means a residential structure, if used as the

18   principal residence by the debtor, including incidental

19   property."

20           Section 101-27(b) provides guidance on what

21   incidental property means. And it provides that the term

22   incidental property means with respect to the debtor's

23   principal residence, among other things "all easements, rights,

24   appurtenances, fixtures, rents, royalties, mineral rights, oil

25   or gas rights or profits, water rights, escrow funds, or

1  insurance proceeds."  And that is 101-27(b).

2       I conclude, based on the statutory framework, that

3  the motion should be granted and the complaint should be

4  dismissed in that the allegations in the complaint do not state

5  a claim that the deed of trust in this case can be modified

6  under the provisions of 1322(b)(2).  Stated otherwise, I

7  conclude that this loan is secured only by a security interest

8  in real property that is the Debtor's principal residence, as

9  that phrase is used in 1322(b)(2).

10      I am not writing on a clean slate.  I adopt Judge

11 Manus's view in the decision of *In Re. Akwa*, A-k-w-a, which he

12 signed on July 18, 2014.  One reference to that memorandum is

13 in Adversary Case 14-267, Docket 13, entered on July 18, 2014.

14 Judge Manus went through the changes to the Bankruptcy Code by

15 the 2005 amendments, including the changes to Section 101(a)

16 and 101-27(b), as I have just read, and concluded that these

17 cited provisions do not enable the Debtor to bifurcate the

18 secured lender's claim in that case.

19      Like Judge manus, I also rely on the decision of *In

20 Re. Davis*, which is a Sixth Circuit case.  In *Davis*, which is

21 at 989 Fed.2d. 208, Sixth Circuit 1993, the Sixth Circuit

22 basically determined that the security interest must extend

23 beyond terms that are "inextricably bound to the real property

24 itself, as part of the possessory bundle of rights."  And that

25 is 989 Fed.2d. 213.  That case involved rents and royalties.

1    And the Court found that those were inextricably bound to the

2    real estate, and therefore the anti-modification provision did

3    not apply.

4         And more recently, Judge Hazel of the District Court

5    affirmed Judge Manus in a case cited at 215 Westlaw 2085191.

6    Judge Hazel relied on the language of the Bankruptcy Code and

7    also the *Davis* case and concluded that in the facts before it

8    or the matter before it, before Judge Hazel, the loan could not

9    be modified.

10        While the parties point out that toward the end Judge

11   Hazel, his opinion, Judge Hazel did say that the Debtor's

12   complaint may have been on more solid ground if the deed of

13   trust explicitly attempt to take a security interest and

14   additional collateral and pointed out that some courts have

15   found additional security interest in escrow accounts.  I point

16   out that when Judge Hazel was discussing the *Davis* case earlier

17   in the opinion, he specifically said, "This rationale also

18   applies to escrow funds and miscellaneous proceeds that are

19   inexplicably tied to the real property."  And I agree with that

20   sentiment in light of the language of Section 101-27(b), which

21   expressly includes escrow funds.

22        In this case, the escrow funds are mortgage

23   insurance, taxes, and insurance premiums.  And those items

24   are, of course, in my view inexplicably bound to the real

25   estate.

1         I disagree with the Debtor's reading of Section

2    1322(b)(2).  The Debtor would read that if the security

3    interest is in something in real property, then all bets are

4    off.  And at that point, the anti-modification provision

5    doesn't apply.  The Debtor points out that escrow funds, rents,

6    royalties, and insurance are not "real property" within the

7    meaning of 1322(b)(2), and therefore the anti-modification

8    provision should not bar the modification of the Debtor's loan

9    in this case.

10        However, the basic standard, basic tenet of statutory

11   construction that the statute should be read so that all words

12   are given effect.  The precise phrase is a security interest in

13   real property that is the Debtor's principal residence.  As I

14   understand the Debtor's argument, if you look solely to the

15   term real property, then you never really get to the

16   significance of what does the phrase "that is the Debtor's

17   principal residence" mean.  And therefore, the definition of

18   101-27(b), which was added to the Bankruptcy Code in 2005 would

19   never have significance to the operation of 1322(b)(2) because

20   those items are not real property.

21        So I believe that the Debtor's interpretation of

22   1322(b)(2) reads out of that provision the phrase "that is the

23   Debtor's principal residence," and thereby essentially reads

24   out of the definition the -- excuse me.  Therefore reads out of

25   Section 1322(b)(2) the definitions added to the Bankruptcy Code

1    at 101-13(a) and 101-27(b).

2         So for those reasons I am going to enter an order

3    dismissing the complaint, and we will see where this goes.

4         Thank you very much.

5         MS. WILLIAMSON:  Thank you, Your Honor.

6         MR. BURNS:  Will Your Honor enter an oral motion for

7    direct certification of the United States Fourth Circuit

8    pursuant to 157 Title 28?

9         THE COURT:  Well, you all have opportunity to talk

10   about that.  And you either have to do it by agreement or if

11   you ask, I have to -- you could do it by a motion.  But I am

12   not going to accept an oral motion.

13        MR. BURNS:  Very well.  Thank you, Your Honor.

14        THE COURT:  Thank you.

15        (Whereupon, the hearing was concluded.)

16

17

18

19

20

21

22

23

24

25

<u>C E R T I F I C A T E</u>

I certify that the foregoing is a correct transcript from the provided electronic sound recording of the proceedings in the above-entitled matter.

*Gail Williams*    07-06-2015
_____
Gail A. Williams              Date
Certified Transcriber
Certificate No.:  CET**434